VICTORY, Judge.
This appeal arises out of a manslaughter conviction for which the defendant was sentenced to 18 years imprisonment at hard labor. He appeals, contending the sentence is excessive. We affirm.
FACTS
Defendant, Janos Palinkas, was born in 1931 in Budapest, Hungary. Leaving his homeland in 1956, defendant arrived in the United States in 1957, gaining citizenship in 1968. He began working in the New Orleans area in 1957 and worked there for 30 years.
In March 1987, defendant traveled to Ru-ston to withdraw over $12,000 from a T.L. James Co. employee profit-sharing plan. He rented a room at the Lincoln Court Motel in Ruston and became acquainted with another resident, Dan Jenkins. The two became friends and visited in each other’s rooms often.
Defendant testified that on the day he picked up his check from T.L. James, Jenkins asked to see the check, and asked to borrow $20 or $30. The next day, defendant cashed the check, loaned Jenkins $20, and upon Jenkins’ request, showed him the cash. Jenkins, offered to get some women to come “party”, but defendant declined.
Defendant stated he was drinking outside his room later that night when two women stopped by looking for Jenkins. Defendant invited them in and gave them drinks. The women asked to see the money which they had heard Jenkins talk about, defendant retrieved the hidden cash from his van, showed it to them, and replaced it. Defendant testified he was later hit on the head with a whiskey bottle and knocked unconscious. When he awoke, he said the women and his money were gone.
Defendant stated he received an anonymous telephone call a short time later threatening his life if he called the police. He related the events to Jenkins, and the next morning reported the robbery to the police. The two women were subsequently picked up and charged with armed robbery. It was discovered that one of the two women arrested for the robbery was Jenkins’ cousin. Despite his promises to do so, Jenkins refused to testify against the women, and they were not convicted.
According to defendant, Jenkins told him he took half the money in return for not reporting the robbery to the police. Jen *29 kins promised to pay back his $5,000 share by making monthly payments to defendant, but none were ever made. On several occasions when defendant asked about the money, Jenkins got mad and cursed defendant.
As a result of the robbery, defendant was penniless. He resorted to cleaning around the motel in exchange for lodging and $2 a week; he subsisted on food stamps.
Over a year later, on the morning of June 19, 1989, defendant went to see Jenkins at his room and again asked for repayment. Jenkins became angry, cursed defendant, and threw a chair at him. He pushed defendant outside, slammed the door and locked it from the inside. Defendant then broke out the window next to Jenkins’ door and shot Jenkins five times with his pistol.
Shortly after the shooting, defendant turned himself in to Charles James, Superintendent of the Lincoln Parish Detention Center. He told James he had killed a man at the motel and turned over the .38 caliber pistol that had been used to kill Jenkins. James took defendant back to the motel where they were met by Ruston Police Inspector Jay Kavanaugh. Kavanaugh unlocked the door to Jenkins’ room and discovered Jenkins’ body on the floor. His wallet, containing $5, was on the floor next to the body.
Defendant was indicted by grand jury for second degree murder and convicted by a unanimous jury of manslaughter.
EXCESSIVE SENTENCE
The sole error for our consideration is whether defendant’s sentence is excessive.[1] The test in determining the excessiveness of a sentence is two-pronged. First, the record must show the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983).
Articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Mims, 550 So.2d 760 (La.App. 2d Cir.1989); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
The trial judge gave a lengthy recitation of the facts, expressing sympathy for defendant and his difficult background coming from communist Hungary, along with his Unfortunate situation in Ruston. He observed defendant did not have a significant criminal history. The judge considered defendant’s age, as well as the victim’s age, small size, and poor physical condition.
Noting no amount of property loss is worth a human life, the trial judge stated there was no strong provocation for the killing, the incident occurred at the victim’s room and not at a neutral ground, the defendant was carrying a concealed gun, and if defendant’s actions constituted manslaughter, it was a close case. He was of the opinion the jury found the defendant guilty of manslaughter instead of second degree murder out of sympathy for the defendant.
*30 The PSI reflects defendant had two sisters and a brother living in Hungary. He had been married in Hungary, but divorced in 1957 before leaving. He had no children. Since the time he left Hungary some 30 years ago, he had not had any contact with any of his relatives. Defendant had only a limited education, and experienced trouble reading, writing, and speaking English. However, he could understand English when it was spoken to him. His criminal history included several DWI convictions and theft of under $100.
The record reflects the judge adequately considered the statutory guidelines and particularized the sentence to the defendant in compliance with LSA-C.Cr.P. Art. 894.1.
The second factor which we must consider is whether the sentence imposed is too severe. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). A trial court has wide discretion to sentence within the statutory limits, and its sentence will not be set aside absent a showing of manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, supra; State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988).
In State v. Taylor, 535 So.2d 1146 (La.App. 2d Cir.1988), this court found an 18 year hard labor sentence excessive for a manslaughter conviction because the defendant had no prior felony convictions, had a record as an extremely good employee, and witnesses testified he was a nonviolent person. The facts showed the victim had run up $400 in charges on defendant’s Visa card, but had begun to pay off the debt. On the night of the victim’s death, the defendant and victim had been drinking together. Defendant went to the victim’s home with a gun in order to collect his money, and thereafter killed him. There were no witnesses to the shooting. The defendant claimed his gun discharged accidentally. The trial judge ruled the defendant had no specific intent to kill the victim, but nonetheless imposed an 18-year sentence which was reduced by this court to 12 years.
In State v. Freeman, 521 So.2d 783 (La.App. 2d Cir.1988), writ denied 538 So.2d 586, the defendant was charged with second degree murder, but convicted by jury of manslaughter and sentenced to 21 years at hard labor. Defendant, attempting to collect money owed to her, exchanged words and got into a slapping match with relatives of the victim while at the victim’s home. As defendant was leaving the yard of the home, she was tapped on the shoulder by the deaf-mute victim. She turned and stabbed the victim in the heart with a yard realty sign. Despite the fact that defendant had no prior felony convictions, this court upheld the maximum sentence available for manslaughter.
In State v. Hampton, 482 So.2d 141 (La.App. 4th Cir.1986), writ denied, 486 So.2d 749, defendant was charged with second degree murder and convicted by jury of manslaughter. Defendant bludgeoned his victim to death over five dollars and was sentenced to 21 years at hard labor which was affirmed on appeal. Defendant’s criminal history consisted of a single DWI conviction.
In the instant case, it is not disputed that Palinkas shot and killed Jenkins. He admitted it to the police and in open court. Through an Hungarian interpreter, he testified he had a gun in the front of his slacks, covered by a long shirt tail. No weapons were found in the victim’s room or around him. There was no claim of self defense.
Further, although Inspector Kavanaugh was somewhat familiar with the results of the investigation into the theft of defendant’s money, he was not aware of anything implicating Jenkins in the theft other *31 than defendant’s statements on the day of Jenkins’ death and at trial.
Considering the vicious manner in which this killing was committed on an unarmed victim who presented no threat to defendant, we cannot say the trial judge abused his discretion in imposing a sentence of 18 years at hard labor in this case.
ERROR PATENT
The trial judge failed to give defendant credit for time served, an error patent. State v. Lee, 577 So.2d 1193 (La.App. 2d Cir.1991); State v. Sweet, 575 So.2d 937 (La.App. 2d Cir.1991); LSA-C.Cr.P. Art. 880. The sentence is amended to give such credit.
DECREE
For reasons stated herein, defendant’s sentence is amended to give credit for time served, and as amended, affirmed.
AMENDED AND AFFIRMED.

. Defendant, in proper person, filed three other assignments of error, which defense counsel, after consultation with and agreement of defendant, concluded were meritless and not briefed. They are thus considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989).
Further, in State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991), we held a defendant cannot be both a representative and be represented.