STEWART, Judge.
Defendant, James R. Hampton, was charged by bill of information, along with co-defendants, Lamar Taylor and Andrew Davenport, with one count of armed robbery, in violation of LSA-R.S. 14:64. He plead guilty as charged, with an agreed maximum sentence limitation of 25 years at hard labor, without benefit of probation, parole, or suspension of sentence. As part of the plea agreement, Hampton agreed that, if called as a witness, he would testify truthfully at the trial of his co-defendants. The trial court ordered a full presentence investigation.
While awaiting sentencing, Hampton testified at the trial of Lamar Taylor. The trial court subsequently sentenced Hampton to 25 years at hard labor, without benefit of probation, parole, or suspension of sentence and with credit for time served. Hampton appeals the sentence, asserting that the sentence is excessive, that the trial court failed to comply with Art. 894.1, and that the presence of Hampton’s defense counsel should have been required for his testimony during Taylor’s trial. We affirm.
FACTS
James Hampton, Lamar Taylor, and Andrew Davenport were charged by bill of information with armed robbery. On January 11,1991, James Hampton pled guilty to armed robbery. During the guilty plea colloquy, Hampton agreed that the following were the facts regarding the offense:
Lamar Taylor, Andrew Davenport, and James Hampton robbed the Pioneer Bank located at 6725 Southern Avenue in Shreveport at approximately 11:20 a.m. on March 29,1990. Lamar Taylor drove a blue Isuzu car, owned by his girlfriend, and transported Andrew Davenport and James Hampton to the Pioneer Bank on Southern Avenue. Andrew Davenport and James Hampton entered the Pioneer Bank and, armed with handguns, the two men took approximately $7,000 in cash from various teller windows inside the bank. The two men fled the bank building and returned back to the blue Isuzu car. Lamar Taylor then drove them to Hampton’s residence at the Pines Apartments.
The money taken from the Pioneer Bank contained transponders which allowed police to follow the three men. Shortly after the robbery, police converged at the Pines Apartments. The tracking device led police to Hampton’s apartment where they entered the apartment and apprehended the three men and one female.
Officers searched the apartment and, in a back bedroom, found a .357 magnum revolver, a brown paper sack containing approximately $7,000 in cash, a Smith & Wesson revolver and two bundles of U.S. currency containing the transponders. Officers also discovered various items of clothing in this bedroom, including two black nylon stockings which had been cut apart mid-calf. The four persons taken from the apartment were arrested and taken into custody.
Part of the plea agreement between Hampton and the court was that the court would impose a sentence no greater than 25 years at hard labor without benefit of probation, parole, or suspension of sentence, and that Hampton would testify truthfully at the trial of either co-defendant.
On July 15, 1991, Hampton testified during the armed robbery trial of Lamar Taylor. His testimony was inconsistent with the facts stated during his guilty plea colloquy and inconsistent with his prior statement to officers. Lamar Taylor was found guilty of armed robbery by a vote of ten to two.
On March 27,1991, after full presentence investigation (PSI), Hampton was sentenced to serve 25 years at hard labor without benefit of probation, parole, or suspension of sentence. Hampton appeals the sentence as excessive and claims that his *833 counsel should have been present during his testimony in the trial of Lamar Taylor. We disagree.
DISCUSSION

Sentence Review

In his first assignment, Hampton asserts that the trial court imposed an excessive sentence and contends that the trial court articulated inadequate and irrelevant reasons for the sentence. The record does not support these contentions.
The trial court carefully reviewed the PSI and noted that, at the time of sentencing, Hampton was 29 years old. Hampton was married, but had no children or dependents. The trial court observed that Hampton, also known as James Ray Hamilton, was born in 1962. In 1980 he was charged with simple burglary and sentenced to five years at hard labor, suspended on his first felony conviction. He violated the conditions of his probation and it was revoked. In 1981, Hampton was arrested for armed robbery. He plead guilty to simple robbery, and was sentenced in 1982 to 6½ years at hard labor, concurrent with his previous sentence for simple burglary. After his release in 1988, Hampton was arrested for possession of a firearm by a convicted felon. This charge was dismissed in 1989. Hampton was arrested for the instant armed robbery in 1990.
The trial court also noted that, armed with guns, Hampton and Davenport robbed two tellers and obtained just over $7,000. They left the bank and Taylor drove them to Hampton’s apartment. Hampton later plead guilty, admitting to the court his involvement and that of Taylor and admitting that he told police investigators about Taylor’s knowledge of the robbery. At Taylor’s trial before the same judge who had accepted his guilty plea, Hampton testified that Taylor was unaware of the robbery and that he did not tell investigators that Taylor knew about the robbery.
Mentioning the factors of LSA-C.Cr.P. Art. 894.1, the trial court found that Hampton acted under no strong provocation that would tend to justify his conduct. The offense was very serious, and Hampton’s conduct caused and threatened serious harm to the people at Pioneer Bank. Incarceration would impose no great hardship on anyone other than Hampton. Hampton’s revoked probation, the short period between his release and the commission of his next offense, and his two prior felonies, one of which was robbery, indicated that given a lesser sentence, Hampton would shortly thereafter commit, other felony crimes. From observation of Hampton in the guilty plea colloquy and in Taylor’s trial, the trial court concluded that his character and attitude suggested the probability of future criminal misconduct. The court concluded that Hampton was in need of correctional treatment in a custodial environment, and that a lesser sentence would deprecate the seriousness of Hampton’s criminal conduct.
Hampton also argues that the trial judge inappropriately considered his inconsistent testimony as a decisive factor in imposing the 25-year sentence.
The trial court’s opinion of a witness’ credibility cannot form the sole basis for a determination of sentence. State v. Taylor, 535 So.2d 1146, 1148-1149 (La. App.2d Cir.1988).
The trial judge noted that Hampton lied, either in his testimony during Taylor’s trial or in his statement during the guilty plea colloquy, and stated that he believed Hampton to be a liar whose demeanor and attitude at the trial of Lamar Taylor were extremely inappropriate. It is evident from the sentencing transcript that Hampton’s credibility was one factor among many which the trial court addressed. The trial court considered Hampton’s personal history, criminal record, details of the instant offense, and both mitigating and aggravating factors, in compliance with Art. 894.1. On this record, the trial judge’s observation regarding Hampton’s credibility cannot be construed as the sole basis for the imposition of sentence.
*834 The penalty for armed robbery is not less than 5 years and not more than 99 years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64 B. If Hampton had been convicted as a third felony habitual offender, his exposure would have been between a minimum of 66 years and a maximum of 198 years at hard labor without benefit of probation, parole, or suspension of sentence. LSA-R.S. 15:529.1 A(2)(a).
In light of the circumstances of this case and defendant’s third felony offender status, the sentence imposed is not excessive. The trial judge complied with the guidelines of LSA-C.Cr.P. Art. 894.1. Hampton posed a serious risk of bodily injury to his victims by committing this armed offense. Hampton’s 25-year sentence is well within the statutory range provided by law. The plea agreement pursuant to which Hampton pled guilty served as a tremendous advantage in that it reduced his possible exposure to less than half of the minimum sentence required if he had been adjudicated a third felony offender. The sentence imposed is neither grossly out of proportion to the seriousness of the offense nor a purposeless and needless infliction of pain and suffering. The record reveals no abuse of the trial court’s sentencing discretion.

Right to counsel

Hampton assigns as error the trial court’s failure to require the presence of his counsel during his testimony at Taylor’s trial. Hampton argues that because his testimony at the trial was such a decisive factor in the sentence imposed, he should have been represented by counsel at the trial, and the trial court should have required the presence of Hampton’s counsel.
In all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. U.S.C.A. Const.Amend. 6. The Sixth and Fourteenth Amendments to the United States Constitution assure the right to counsel at the trial stage of a criminal proceeding and for an initial appeal from the judgment and sentence of the trial court. Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).
Prior to the testimony at issue, Hampton plead guilty and waived his right against self-incrimination. During the guilty plea colloquy, the trial court agreed to a 25-year ceiling and Hampton agreed to testify truthfully regarding the involvement of his co-defendants in the armed robbery. The trial court then ordered Hampton to testify truthfully if called as a witness at the trial of the co-defendants.
At the trial of co-defendant, Lamar Taylor, Hampton testified inconsistently with his prior statements, to the trial court and to investigators, that Taylor was knowingly involved in the armed robbery. At the sentencing hearing, defense counsel objected to the fact that the presence of counsel was “not required” during Hampton’s trial testimony.
The presence of Hampton’s attorney at the Taylor trial would have provided Hampton with neither a shield to protect him against being stripped of his presumption of innocence nor a sword to upset a prior determination of guilt. See Murray, supra 109 S.Ct. at 2769, citing Ross v. Moffitt, 417 U.S. 600, 610-611, 94 S.Ct. 2437, 2443-2444, 41 L.Ed.2d 341 (1974). There is no indication in the record that either Hampton or his counsel requested, or was denied, assistance of counsel at Taylor’s trial. We find no statutory or jurisprudential support for Hampton’s assertion that a non-party witness, who previously plead guilty and was properly boykinized, is entitled to assistance of counsel in the trial of a co-defendant. Hampton cites no support for this contention. Hampton was merely a witness at Taylor’s trial. This assignment lacks merit.
Finally, Hampton seeks to explain or mitigate his behavior at the Taylor trial by asserting that the trial court failed to provide additional security measures at the trial to provide a secure environment for his testimony as a state witness. The *835 record provides no support for Hampton’s alleged expectation of additional security procedures. Accordingly, we find no merit to this argument.

Error patent

We have reviewed the record for errors patent and found none.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.